

U.S. Department of Justice

Channing D. Phillips
Acting United States Attorney

*District of Columbia*

---

*Judiciary Center*
*555 Fourth St., N.W.*
*Washington, D.C.  20530*

April 7, 2021

**VIA EMAIL**
Eugene Ohm
625 Indiana Ave, NW
Suite 500
Washington, DC 20004
Email: eugene_ohm@fd.org

       Re:  **United States v. Winston Kelly**
         **Case No. 21-cr-59 (RC)**

Dear Counsel:

  To the extent that the D.C. Department of Forensic Sciences (DFS) played any role in this case, we are writing to provide you with the following information related to DFS.  This information falls broadly into four categories:  (1) materials related to the government's investigation of alleged misconduct by employees of DFS and the Metropolitan Police Department (MPD); (2) correspondence related to the government's investigation and the government's subsequent request that DFS participate in an outside audit process; (3) materials related to a review and audit of selected casework of the DFS Firearms Examination Unit (FEU) and overall quality assurance process; (4) materials related to DC-OIG criminal investigation and related audit report;[1] and (5) Quality Corrective Action Reports (Q-CARs) generated by DFS and provided to the government.

  The materials themselves are available for download from USAfx at "DFS Disclosures."[2]  Please note that the folders on USAfx are organized by topic and a copy of the index is available on USAfx.  If the government comes into possession of additional materials related to DFS after

---

[1] As of March 22, 2021, this Omnibus DFS Disclosure Letter has been updated to include the materials related to the DC-OIG criminal investigation and related audit report.  The accompanying source materials were added to the DFS Disclosures folder on USAfx on March 22, 2021.  On April 2, 2021, additional source materials were added. On April 4, 2021, a document was added showing that on April 2, 2021, the ANSI National Accreditation Board suspended DFS's certificate of accreditation.

[2] Preferably using a Chrome browser, please navigate to the following link: https://usafx.box.com/s/hor73g4hccr4y56a17ui2s827sx7vf9o

1

the date of this letter, the government may make those materials accessible to you by uploading the materials to USAfx and adding them to the index available on USAfx. The index reflects the date that the materials were uploaded to USAfx.

If you require assistance accessing the materials, please contact the undersigned AUSA.

1. **<u>Materials Related to the Government's Investigation of Alleged Misconduct</u>**

In September 2019, the United States became aware of allegations of misconduct by personnel at DFS[3] and MPD, including DFS's former Acting Deputy Director Karen Wiggins[4]; Unit Manager Jonathan Pope of the DFS FEU; FEU Firearms Examiner Steven Chase; other DFS employees who are or were affiliated with the FEU; and Unit Manager Alesia Wheeler-Moore of the DFS Crime Scene Sciences Unit (CSSU), who previously served as a lieutenant in MPD's Crime Scene Investigations Division (CSID). As described more fully in the materials being provided, the allegations included concerns about DFS operations related to the firearms examination and verification procedures used by the FEU during April and May 2017, in particular, and that DFS and MPD officials whitewashed the allegations and concealed them from the United States Attorney's Office (USAO).

On October 8, 2019, in partnership with the D.C. Office of the Inspector General (DC-OIG) and the Federal Bureau of Investigation (FBI), the Fraud and Public Corruption Section (FPC) of the USAO's Criminal Division initiated a formal investigation into the allegations. In the course of its investigation, the government conducted interviews of more than a dozen people—some more than once—and obtained documents and e-mails from current and former DFS and USAO personnel. The government concluded its investigation on January 31, 2020, and, on the same day,

---

[3] Except as explained in footnote 4, to the best of the government's knowledge, during most times relevant to the government's investigation, DFS's publicly available organizational chart reflected that the Deputy Director reported to the Director. During those times, the Deputy Director oversaw three divisions: the Forensic Science Laboratory Division (FSLD), the Crime Scene Sciences Division (CSSD), and the Public Health Laboratory Division (PHLD). The FSLD, in turn, contained five units: the Forensic Biology Unit (FBU), the Firearms Examination Unit (FEU), the Latent Fingerprint Unit (LFU), the Digital Evidence Unit (DEU), and the Materials Analysis Unit (MAU). The Crime Scene Sciences Division (CSSD) contained two units: the Crime Scene Sciences Unit (CSSU) and the Central Evidence Unit (CEU). The PHLD also had five units: the Accessioning Unit (AU); the Bioterrorism & Molecular Diagnostics Unit (BMD), the Biomonitoring & Analytical Chemistry Unit (BAC), the Microbiology Unit (MU), and the Immunology & Virology Unit (IVU).

[4] Former DFS Acting Deputy Director Wiggins retired on December 29, 2019. It is believed that Wiggins assumed the role of Acting Deputy Director in or about June 2019; became the Director of the FSLD at some point in 2015; and, before that, was hired in 2013 to be the DFS Deputy Director of Quality Assurance. Former Acting Deputy Director Wiggins generally is believed to have had oversight responsibilities over the FSLD, CSSD, and PHLD, and their respective units. It is the government's understanding that, although Wiggins concurrently held the position of Director of the FSLD until November 10, 2019, there also was an Acting Director of the FSLD. On November 10, 2019, the Acting Director of the FSLD became its permanent director. The Director of the FSLD—who was not a subject of the government's investigation—generally is believed to have oversight roles of the FBU, FEU, LFU, DEU, and MAU.

It is the government's understanding that following the Acting Deputy Director Wiggins's retirement, DFS's Director assumed responsibility for the Deputy Director's portfolio pending the selection of Wiggins's replacement. Additionally, the government believes that DFS moved the DEU outside the FSLD into a new Cyber Operations Section (COS) joined with the Forensic Technology Unit (FTU). It also appears that DFS eliminated the MAU and made additional organizational modifications related to the PHLD that are not relevant to this disclosure.

sent a cover letter and a 31-page report of its findings and recommendations for additional inquiry and corrective action to DC-OIG (the "January 31, 2020, Report of Referral").

On April 23, 2020, the USAO, along with the Office of Attorney General for the District of Columbia (OAG), formally notified DFS that the government has retained independent experts to audit DFS's policies and practices focusing, in particular, on the FEU and DFS's quality assurance program. Although the government is keeping DC-OIG informed of the progress and findings of its audit, the USAO does not anticipate participating directly in the DC-OIG administrative investigation, which is expected to be conducted independently from the USAO and OAG.

On May 4, 2020, the USAO contacted DC-OIG to determine the current status of the USAO's referral. DC-OIG informed the USAO that, on May 5, 2020, it closed its criminal investigation and opened a new administrative case based on the USAO's referral.

The government is providing a copy of the January 31, 2020, Report of Referral along with the primary source materials related to its investigation and an index of the primary source materials.

In connection with its investigation, the government obtained a total of approximately 600,000 pages of e-mails and attachments (after removing collected duplicates) from the accounts of five current and former DFS employees. The time period involved in the collection generally ranged from between January 2016 and October 2019, although the exact time period collected for each employee may differ. These employees whose e-mails were collected are Karen Wiggins, Jessica Beyer, Jonathan Pope, Deion Christophe, and Steven Chase. This collection is bulk in nature, is not limited to e-mails discussing the events underlying the matter under investigation, and may contain sensitive personal information. At this time, the government is providing only those e-mails listed in the index of the primary source materials that accompanied the January 31, 2020, Report of Referral – i.e., the e-mails which were identified through applicable searches as relevant to the criminal investigation.

During the course of its investigation, the United States also became aware of allegations that, after the USAO notified DFS in 2017 that it no longer was willing to sponsor a DFS crime scene scientist as an affiant or witness ("do not sponsor"), DFS's former General Counsel felt pressure from DFS's Director, Dr. Jenifer Smith, to avoid other situations in which the USAO would not sponsor DFS employees by lessening the discipline imposed on DFS employees. On or about August 18, 2017, the USAO notified DFS that it no longer was willing to sponsor the crime scene scientist because of a disciplinary matter in which DFS found both that the employee made a false statement to a supervisor regarding the employee's processing of a firearm and that the employee repeated that false statement during an administrative investigation by DFS into the matter. On or about September 7, 2017, after learning that the employee was still collecting and processing evidence, the USAO explained to DFS that permitting the employee to do so created a risk that the United States may not be able to use at trial the evidence that the employee collected.[5]

---

[5] At or about this time, DFS's then-General Counsel expressed concern to AUSA Michael Ambrosino about Director Smith's decision to use the employee in an evidence collection and processing role. The then-General Counsel further explained that she feared losing her bar license if she followed this directive. She also told AUSA Ambrosino that she brought this issue to the attention of the Mayor's Office of Legal Counsel (MOLC). Ultimately, it appears that DFS stopped using the employee to collect evidence, and that the employee is no longer employed by DFS.

3

Subsequently, on at least two separate occasions in 2017, including during a meeting on December 4, 2017, Director Smith sought an explanation for, and reconsideration of, the USAO's decision not to sponsor the crime scene scientist.[6] In particular, Director Smith requested that the USAO give the employee another chance so that the employee could continue to testify in criminal cases prosecuted by the USAO. After considering Director Smith's arguments, the USAO did not change the employee's designation. After the USAO declined to change its decision about the employee, DFS's then-General Counsel told AUSA Michael Ambrosino, Special Counsel for DNA and Forensic Evidence Litigation, that Director Smith criticized her for informing the USAO about the employee's conduct, including the employee's false statements.

Although, during her interview, DFS's former General Counsel generally recalled documenting employee issues to lessen the discipline to avoid the USAO's do not sponsor designation, she was unable to identify any specific instances in which she had done so and stated that she would never change the facts of an internal investigation and never found Director Smith's actions or requests to be unethical.

Since the former General Counsel's departure from DFS on or about November 1, 2019, DFS has notified the USAO of a number of disciplinary matters that DFS had not previously disclosed or identified for disclosure in response to requests for Giglio information by the USAO.[7] DFS imposed discipline in those matters between February 2014 and July 2019, in many instances for safety and health violations and failure/refusal to follow instructions. DFS has indicated that it is reviewing why these matters were not previously disclosed or identified for disclosure, but believes it may have been due to a prior interpretation of DFS's Giglio obligations as it relates to confidential employee information that does not bear on veracity.

Also, most recently, in exhibits accompanying a letter to our office dated May 6, 2020 (identified below), DFS produced a two-page email that it described as containing its former General Counsel's "implicit direction to her subordinate to change [a] 'False Statements/ Records' disciplinary charge because it is a 'tough one to shake.'" *See* 2020-05-06 DFS Letter to USAO re Alleged Misconduct, at Exhibit 7.1

---

[6] The United States also was notified in November 2017 that Director Smith was angry about the USAO's decision in or about February 2017 not to sponsor DFS Firearms Examiner Daniel Barrett, who retired after DFS discovered errors in his examinations following a failed proficiency test and the discovery of casework errors. To the best of the government's knowledge, at the time material to FPC's investigation, the only two DFS employees whom the USAO had stated an unwillingness to sponsor were the crime scene scientist and former FEU Firearms Examiner Barrett.

[7] As of January 31, 2020, DFS had notified the USAO of 21 such matters for 17 DFS employees. It is the United States' understanding that, barring unforeseen circumstances, DFS has completed its review for additional information potentially responsive to prior USAO Giglio requests.

2. **Correspondence Related to the Government's Investigation and Request for an Outside Audit**

The government is also providing the following correspondence related to the government's investigation and the government's subsequent request that DFS participate in an outside audit process:

2020-02-13 Letter from Daniel Barrett to AUSA Michael Ambrosino re DFS FEU.pdf
On February 13, 2020, former DFS Firearms Examiner Daniel Barrett sent a letter to AUSA Michael Ambrosino making allegations regarding FEU.

Deputy Mayor Memo 2.14.2020 short version.pdf
On February 14, 2020, DFS sent a letter to the Deputy Mayor regarding the January 31, 2020, Report of Referral responding to its findings.[8]

2020-04-23 Joint USAO-OAG Letter to Dr. Jenifer Smith re DFS Audit (with Attachments).pdf
On April 23, 2020, the USAO and OAG sent a joint letter to DFS seeking DFS's cooperation in an independent audit of DFS that OAG and USAO are sponsoring.

2020-05-19 DFS Response to 2020-04-23 Joint USAO-OAG Letter re DFS Audit.pdf
On May 19, 2020, DFS responded to the April 23, 2020, joint USAO-OAG letter by declining to participate in the independent audit and announcing its intention to participate in an audit undertaken by its accrediting body, the American National Standards Institute's (ANSI) National Accreditation Board (ANAB), and a review undertaken by the Science Advisory Board (SAB).

2020-05-06 DFS Letter to USAO re Alleged Misconduct.pdf
On May 6, 2020, DFS sent a letter, with accompanying exhibits, to the USAO regarding the January 31, 2020, Report of Referral and related matters, including accusations of misconduct against its former General Counsel and USAO employees.

2020-06-15 USAO Response to 2020-05-06 DFS Letter.pdf
On June 15, 2020, the USAO wrote to the Chief Judges of the Superior and U.S. District Courts to update the courts and respond to DFS's May 2020 accusations, attaching the April 23, 2020, letter (and accompanying attachments) and the May 19, 2020, letter as Attachments 1 and 2, respectively.[9]

Executed DOM15 Closeout Report.pdf
On March 5, 2021, DFS issued a report entitled "Departmental Operations Manual 15 Closeout Report of Complaint/Inquiry Review Team Regarding January 7, 2020 Erroneous NIBIN Confirmation Complaint."

2021-03-22 USAO Letter to DC-OIG.pdf

---

[8] In March 2020, DFS provided a copy of this letter to the USAO. The file name of the PDF that DFS provided to the USAO was "Deputy Mayor Memo 2.14.2020 short version"; the USAO is not aware of a longer letter or memo.

[9] On June 16, 2020, the USAO provided a copy of this letter (and accompanying attachments) to the Public Defender Service and representatives from the CJA bar and criminal defense clinics.

On March 22, 2021, Acting U.S. Attorney Channing Phillips wrote to DC-OIG to refer the March 18, 2021, Final Audit Report to DC-OIG for investigation. The letter copied the Chief Judges of the Superior and U.S. District Courts and representatives from the defense bar.

2021-03-22 OAG Letter to DC-OIG.pdf
On March 22, 2021, D.C. Attorney General Karl Racine wrote to DC-OIG to refer the March 18, 2021, Final Audit Report to DC-OIG for investigation.

DFS Letter to Chairperson Allen re Oversight Responses.pdf
On March 26, 2021, DFS wrote to Chairperson Allen attaching information for DFS's performance oversight hearing. The letter also addressed Dr. Jenifer Smith's understanding regarding USAO and OAG use of FEU.

DC DFS suspension and withdrawal notification.pdf
On April 2, 2021, ANAB informed DFS that it was "immediately suspending the laboratory's accreditation and initiating the process for withdrawal of accreditation."

3. **Materials Related to a Review and Audit of Selected Casework of the DFS Firearms Examination Unit**

Beginning April 6, 2020, the USAO and OAG asked a team of independent auditors (Bruce Budowle, James Carroll, and Todd Weller) to initiate an audit of DFS.  The auditors were directed to investigate the following: (1) conduct disclosed by DFS to USAO in 2016-2017, including a failed proficiency exam and multiple casework errors (not caught during the verification process); (2) conduct which appears to have been intentionally withheld by DFS management from USAO and OAG, including a failed proficiency exam, policy deviations, and an effort by DFS management to pre-determine the outcome of an investigation into conduct involving policy deviations, at minimum; and (3) discovery in January 2020, through analysis performed by four independently retained firearms experts, that four DFS firearms examiners erroneously connected two homicides by concluding the same gun fired shell casings recovered from both homicide scenes.[10]

On May 21, 2020, the auditors issued an Interim Report, and on June 4, 2020, an Addendum to that report.  On July 29, 2020, the auditors submitted a proposed audit plan.  On August 9, 2020, the auditors issued a second Interim Report.

As part of their work, the auditors reviewed a variety of source materials including the underlying reports and various correspondence.  The auditors also conducted interviews of the following former DFS employees:  Jessica Beyer, Deion Christophe, Chris Coleman, Brittany Graham, Travis Spinder, Alicia Sandstrom (Vallario), and Michael Mulderig.

As listed in the index, the government is providing the May 21, 2020, Interim Report and accompanying attachments; the June 4, 2020, Addendum and accompanying attachments; the July 29, 2020, proposed audit plan; the August 9, 2020 Second Interim Report; a January 17, 2020 USAO letter to DFS; DFS's letters to the USAO dated January 22, 2020, January 23, 2020, and May 22, 2020; the underlying reports and source materials reviewed by the auditors; and

---

[10] This third category is discussed further in Section 3(A), below.

summaries of the interviews, a video recording of the auditors' first interview of Travis Spinder, and materials that the interviewees provided to the auditors.

### A. Materials related to *United States v. Rondell McLeod*, 2017 CF1 9869

In *McLeod*, currently pending in D.C. Superior Court, the government is engaged in ongoing litigation regarding at least four DFS firearms examiners making false identifications of ballistic evidence. On May 1, 2020, the defendant filed a motion to dismiss the indictment, arguing that the government placed false ballistics evidence before the grand jury. On July 15, 2020, the government issued a subpoena to DFS requesting documents concerning those false identifications as well as DFS's subsequent review of those identifications. DFS retained outside counsel and claimed that certain documents responsive to the subpoena are protected by an evidentiary privilege. Judge Edelman held a hearing on this issue on August 21, 2020. On November 10, 2020, Judge Edelman ruled on DFS's privilege assertion and directed DFS to produce 24 documents to the government subject to a protective order that prohibited their disclosure in other cases. On November 20, 2020, Judge Edelman granted the government's motion to vacate this protective order, and the government has now placed the documents in the "DFS Disclosures" folder on USAfx. An updated index of these materials is also available for download from USAfx.

Below is an overview of the *McLeod* litigation and these documents.[11]

In *McLeod*, the United States is engaged in ongoing litigation regarding at least four DFS firearms examiners making false identifications of ballistic evidence. This litigation stems from a series of errors made by DFS firearms examiners concerning the comparison of two items of ballistics evidence from two homicides committed on August 18, 2015, and November 12, 2015: Item 16 (a 10mm cartridge casing) from the August 18 scene and Item 45 (a 10mm cartridge casing) from the November 12 scene.[12]

The two casings were the subject of a potential correlation through the National Integrated Ballistic Information Network, or "NIBIN" (USAO-003722). In January 2016, now-former DFS firearms examiner Daniel Barrett identified Items 16 and 45 as being fired from the same firearm (USAO-003723), and Barrett's conclusions were verified by now-former DFS firearms examiner Luciano Morales. In August 2017, now-former DFS contract firearms examiner Alicia Vallario reworked the evidence at the government's request after Barrett failed a proficiency test, and she also identified Items 16 and 45 as being fired from the same firearm "based on firing pin aperture shear marks" (USAO-003724). Vallario also generated a document showing side-by-side photographs of two cartridge casings, which was hand initialed by both Vallario and her verifier, now-former DFS contract firearms examiner Michael Mulderig (USAO-003736). Both sets of initials included the term "ID".

At the government's request, in the fall of 2019, DFS sent the ballistics evidence to Travis Spinder, an independent firearms examiner. On January 4, 2020, Spinder sent the USAO a report reflecting his conclusion that, among other things, the 10mm casings from one scene could be

---

[11] A more fulsome overview is contained in the Government's Motion to Compel Production of Documents from the District of Columbia Department of Forensic Sciences, filed in *United States v. Rondell McLeod*, 2017 CF1 9869, which is available in the DFS Disclosures folder on USAfx (USAO-008305-36).

[12] DFS later assigned new item numbers to both Items 16 and 45. Item 16 was later renumbered as Item 1, and Item 45 was later renumbered as Item 22.24. To avoid confusion, they will be referenced as Items 16 and 45 throughout.

*excluded* as being fired from the same firearm as the 10mm casings from the other scene (USAO-003751-60). Spinder's conclusions were verified by independent firearms examiner Lynette Lancon. The government informed DFS of the testing error on January 17, 2020, and attached Spinder's report (USAO-004032-33).

Several weeks later, Jonathan Pope, the director of the Firearms Examination Unit at DFS, contacted Spinder and they exchanged images of the firearms evidence that Spinder had reviewed (USAO-007958-61). Spinder stated that the images sent to him by Pope did not resemble the physical ballistics evidence he examined. The following day, DFS General Counsel Todd Smith sent a letter to AUSA Michael Ambrosino that stated "[w]e have confirmed your letter's statement to be erroneous" and that DFS had "confirmed that [Spinder] never performed a comparison of the two casings recorded in the [August 8, 2017, Vallario] report" (USAO-004037-38). Similarly, in a February 14, 2020 memorandum submitted by Director Smith to Kevin Donahue, then-Deputy Mayor for Public Safety, DFS stated that "the DFS identification [the USAO] alleged to have been in error, had actually never been reviewed by [Spinder]" (USAO-000008-16).

The government requested another analysis from independent firearms examiner John Murdock. Murdock issued a report on February 12, 2020, reaching the same conclusion – an exclusion – as Spinder (USAO-003860-91). Murdock's work was verified by firearms examiner Todd Weller.[13]

Based on interviews of Michael Mulderig in August 2020 (USAO-007950-53), and initials on the evidence packaging as shown in photographs of the packaging taken by Todd Weller (USAO-007954-57), the government learned that additional DFS firearms examiners may have examined Items 16 and 45 between May 1, 2020 and May 4, 2020. As described in the interview summaries, Mulderig stated that he changed his determination from identification to inconclusive after comparing "his evidence" to "Vallario's evidence," although he could not say with absolute certainty that he reviewed Item 16. He stated that his evaluation was not documented in any way. Mulderig stated he was told in early May 2020 that he could no longer work as a contract firearms examiner because of quality issues arising from his verification of Vallario's analysis in August 2017. Mulderig stated that Jonathan Pope had also told him that firearms examiner Elizabeth Bustamante had reached a conclusion of identification when reviewing the evidence. The government to date has received no information from DFS concerning Bustamante's involvement, but her initials are present on the packaging for Items 16 and 45, dated the first days of May 2020 (USAO-007954-57). Initials consistent with DFS supervisory firearms examiner Jonathan Fried were are also present on the packaging in that time period. *Id.*

On May 22, 2020, Director Smith sent a letter to the USAO stating that DFS firearms examiners had "performed a review of the relevant pieces of evidence," that "[t]his review revealed an administrative error on the part of the initial examiner [Vallario], who appears to have incorporated the wrong microscopic photograph into the relevant NIBIN report," and that "when the contract firearms examiner who performed the 2017 verification [Mulderig] was asked to

---

[13] Weller has often served as a government expert concerning sophisticated firearms examination issues (including in the case *United States v. Marquette Tibbs*, 2016 CF1 19431) and served as one of the members of the USAO/OAG audit team (as discussed *infra*).

8

examine the evidence again, he changed his conclusion from an *identification* to an *inconclusive*" (USAO-004039-40).[14]

On May 27, 2020, DFS issued a report authored by Jonathan Fried concerning Items 16 and 45 that stated that his analysis began on May 12, 2020 (USAO-003931). Fried's report stated that the two items "were microscopically examined and could not be identified or eliminated as having been fired in the same firearm due to insufficient agreement or disagreement of individual characteristics." Fried's conclusions were verified by firearms examiner Ashley Rachael.

Auditors retained by the USAO conducted an audit of specific activities at the DFS FEU (*see* USAO-007940-43). On May 21, 2020, the auditors issued an Interim Report (USAO-007908), and on June 4, 2020, an Addendum to that report (USAO-007927). On July 29, 2020, the auditors submitted a proposed audit plan (USAO-003543). On August 9, 2020, the auditors issued a second Interim Report (USAO-007944). The auditors determined (among other things) that the photograph contained in Vallario's case file of two cartridge casings identified as Items 16 and 45 was not of either Item 16 or 45 (USAO-007909), and that Fried's conclusion of "inconclusive" (verified by Rachael) was not scientifically supported (USAO-007927-32). Rather, the auditors concluded that "Items #16 and #45 were not fired in the same firearm," a "conclusion commonly referred to as an 'elimination' or 'exclusion'" (USAO-007930).[15]

On June 12, 2020, in *United States v. Rondell McLeod*, 2017 CF1 9869, the government submitted a discovery request to DFS that sought five categories of information from DFS related to the ballistics comparisons and examinations in that case (USAO-007962-65). DFS responded that it was unwilling to provide the requested material (USAO-008367-73). Accordingly, the government sought subpoena power from the Court to obtain the specific documents sought in the government's June 12, 2020 discovery request to DFS. On July 15, 2020, the government served a subpoena *duces tecum* on DFS seeking the requested documents (USAO-008374-77).

DFS produced a limited range of documents to the government in advance of an August 21, 2020, evidentiary hearing in the *McLeod* case (USAO-007966-8304). DFS also produced a privilege log to the government on August 26, 2020 (USAO-008378-81).

On November 10, 2020, Judge Edelman ruled on DFS's privilege assertion and directed DFS to produce 24 documents to the government subject to a protective order that appeared to prohibit their disclosure to defendants in other cases (USAO-008403-42). These 24 documents were produced on November 12, 2020, subject to the protective order (USAO-008443-8705). On November 20, 2020, Judge Edelman granted the government's motion to vacate this protective order.

---

[14] The May 22, 2020 letter did not address the false identification by Barrett in January 2016 (verified by Morales). It did not state whether Mulderig's employment with DFS had been terminated. The letter stated that "DFS will conduct a case review of a sampling of the verifying examiner's cases" and "because of the presence of the initial examiner's apparent administrative error, DFS will subject the initial examiner's cases to review as well." Finally, the letter stated that seven Quality Corrective Action Reports were opened and that stakeholders would be kept aware of any developments. These "QCARs" were produced in response to the subpoena issued in the *McLeod* case, without their referenced internal supporting documentation. *See* USAO-003134-93.

[15] The auditors also stated that "[t]he finding of 'inconclusive' by Fried and his verifier [Rachael] are not supported by their examination documentation" (USAO-007931).

The documents produced by DFS on November 12, 2020, include the following:

- Document 11: Email dated January 21, 2020 from Jonathan Fried to Jonathan Pope attaching a document entitled "Ambrosino Inquiry Chain of Custody Summaries 1-21-20.docx". Attached summary states that both Items 16 and 45 had been sent to Travis Spinder in November 2019. USAO-008528-45.
- Document 12: Email dated January 21, 2020 from Jonathan Fried to Jonathan Pope stating, "This probably creates more confusion, but if you look at the chains of custody from file on Q for each item, you will see that they both went to an outside lab at the same time that LIMS says Travis had it." USAO-008546-53.
- Document 20: Email dated January 22, 2020 from Jonathan Pope to Wayne Arendse stating "Good Morning Wayne, please see the attached Jon Fried summary, per Dr. Smith, to provide the COC documentation for both cartridge cases." USAO-008554-71.
- Document 24: Email dated January 23, 2020 from Jonathan Pope to Jonathan Fried forwarding an email dated January 23, 2020 from Jonathan Pope to Wayne Arendse stating "Wayne, (See above Attachment #1, page 9) and you will see that Alicia examined and compared Item 22.24 (45) from DFS#15-00253 to Item 1 (16) from DFS#15-00673." USAO-008572-600.
- Document 25: Email dated January 23, 2020 from Jonathan Pope to Wayne Arendse and Jonathan Fried attaching USAO evidence transfer request to Travis Spinder. USAO-008601-07.
- Document 29: Email dated April 30, 2020 from Ashley Rachael to Wayne Arendse, Christopher LoJacono, Abdel Maliky, Todd Smith, Jonathan Pope, and Jonathan Fried, attaching a PowerPoint presentation dated April 30, 2020 by Ashley Rachael and Jonathan Fried. USAO-008611-32.
    - The PowerPoint included the following statements on page 17:
        - All the cartridge cases in both homicide cases were examined in an attempt to locate the cartridge cases pictured in Vallario's case file
        - After a thorough review, it was determined that the photograph in Vallario's case file was not a picture of any of the items in either of the two homicide cases
        - Conclusions reached by independent reports were also confirmed
    - The PowerPoint stated the following on page 20 entitled "Results and Conclusions":
        - Based on a microscopic examination conducted by both Jonathan Fried and Ashley Rachael of Items #1 (16) and #22.24 (45), it was determined to be an **elimination** and not an identification as indicated by Morales and Vallario
        - This elimination transitively agrees with the conclusion reached by the private examiner
    - The PowerPoint stated the following on page 21 entitled "Results and Conclusions":
        - The Items #1 (16) and #22.24 (45) were in Vallario's custody during the time period for which she issued the report and Mulderig completed the verification (8/8/17)
        - Her initials and date on the packages' seal of these two items correspond with this timeframe
        - The items in her photograph were not in Vallario's custody during the time this NIBIN re-work report was issued
        - The chain of custody (CoC) for those items pictured are consistent with that previous examination
    - The PowerPoint stated the following on page 22 entitled "Next Steps":

10

- ▪ Assign re-work of NIBIN Verification to another qualified examiner not involved thus far
  - ▪ Report to stakeholders for transparency
- Document 35: Email dated May 1, 2020 from Jonathan Fried to Ashley Rachael, forwarding email dated May 1, 2020 at 1:20 p.m. from Michael Mulderig to Jonathan Pope copying Jonathan Fried, stating "Items 16 submitted under DFS 15-00673 and 45 submitted under DFS 15-00253 two (2) caliber 10mm Auto cartridge cases that were microscopically examined and identified as having been fired in the same firearm." The email attaches photographs dated May 1, 2020. USAO-008638-41.
- Document 30: Email dated May 1, 2020 at 3:00 p.m. from Michael Mulderig's private email account to Jonathan Pope, stating "After further review of comparison between homicide DFS 15-00253 and NIBIN DFS 15-000673 I am reversing my opinion to be inconclusive due to a sufficient agreement of individual characteristics." USAO-008633.
- Document 31: Email dated May 1, 2020 from Jonathan Fried to Jonathan Pope entitled "timeline", stating in part: "April 27 – April 29: FEU Examiner and Supervisor review case files, packaging, and perform cursory review of the specific items in question, where it is determined that the photo in the Vallario case file is not of the evidence in either case. April 30: In-depth review update provided with FEU Examiner and Supervisor's thoughts and recommendations." USAO-008634.
- Document 44: Email dated May 6, 2020 from Wayne Arendse to Anna Yoder of ANAB entitled "**CONFIDENTIAL** RE: 200127-DCDFS-Firearms Examiner-Inquiry", attaching a letter dated May 6, 2020 from Arendse to Yoder. The letter stated in part: "On April 28, 2020, the FEU Supervisor and a senior Firearms Examiner performed a review of the relevant physical evidence. This review is described in greater detail in the attached PowerPoint presentation," and "[a]t the conclusion of their review of the relevant physical evidence, the FEU Supervisor [Fried] and senior Firearms Examiner [Rachael] concluded that the original identification should have been determined inconclusive. Based on this determination, the FEU manager discussed the matter with the original verifying examiner [Mulderig] to review the physical evidence. Upon review, the original verifying examiner [Mulderig] concluded that the association between the two cartridge casings at issue should be determined inconclusive." The attached PowerPoint stated the following: "The review[er]s who conducted this reviewed the evidence and determined a[n] inconclusive result." USAO-008642-73.
- Document 66: Email chain with top email dated June 22, 2020 from Wayne Arendse to Anna Yoder of ANAB entitled "RE: 200622-DCDFS-Firearms Exmainer-Update_ack-Inquiry". An email in the chain from Arendse to Yoder, copying Jenifer Smith, Todd Smith, and Abdel Maliky states in part: "We received this report as part of a larger sample discovery production assembled by DC OAG, and relating to the USAO's current disagreement with DFS's FEU. Included within those additional documents is a highly confidential DFS report on serious ethical problems at USAO. Because these documents are unusually sensitive, and not closely related to Quality at DFS, we have left them out of this initial production. If you are comfortable receiving these sensitive documents, at your request, we will pass along the larger document in full." Yoder responded: "ANAB is requesting that the additional 'sensitive' documents you mention in your email below." To its knowledge, the government has never received the "highly confidential DFS report on serious ethical problems at USAO." USAO-008678-80.

11

4. **Materials Related to DC-OIG Criminal Investigation and Related Audit Report**

On December 3, 2020, following the production of documents ordered by Judge Edelman in McLeod on November 10, 2020, DC-OIG opened a criminal investigation related to DFS. As of March 18, 2021, that investigation remains ongoing. As part of that investigation, DC-OIG conducted interviews and collected documents. Specifically, DC-OIG interviewed the following individuals and created associated Memorandum of Activity/Interview: Jonathan Fried, Ashley Rachael, Paul Leslie Reedy, Jacquie Reedy, Lyndon Watkins, Elizabeth Bustamante, Cody Elder, Confidential Source 1, and Confidential Source 2 (USAO-008991-009053).[16] DC-OIG also collected emails from certain DFS employees' accounts. DC-OIG provided a small number of these emails and/or attachments to the USAO and OAG (USAO-008903-008990). At the request of DC-OIG, on March 18, 2021, the team of independent auditors (Bruce Budowle, James Carroll, and Todd Weller) issued a Final Report of Review and Audit of Selected Casework of the Firearms Examination Unit of the Forensic Science Laboratory Division, Department of Forensic Sciences, District of Columbia (USAO-009063-88). The Executive Summary of that report states, in part:

> Based on the above findings, the audit team does not have confidence in the analytical results of the FEU. The audit team recommends that the FEU immediately cease performing casework and that clients and stakeholders not rely on results from the FEU. A comprehensive evaluation of the technical competence of all current examiners is required, followed by retraining and testing to establish that they are competent to perform casework and reach appropriate conclusions. Casework already completed by the FEU should be reexamined by qualified examiners in an effort to determine if additional errors have been made. It does not appear that the DFS possesses the qualifications to perform the necessary evaluations, retraining, testing, and casework review that is required, and the audit team recommends that appropriate qualified persons from outside of the DFS be brought in to perform these activities.

> The above findings also illustrate very serious, and perhaps more troubling, problems associated with DFS management. DFS management not only failed to properly address the conflicting results reported to the DFS by the USAO, but also engaged in actions to alter the results reached by the examiners assigned to conduct a reexamination of the evidence. DFS management then misrepresented the various activities undertaken and analytical conclusions reached to their clients and stakeholders, including the USAO, the OAG, their accrediting organization (ANAB), and the SAB. In the opinion of the audit team, such actions by management indicate a lack of adherence to core principles of integrity, ethics, and professional responsibilities. Management has cast doubt on the reliability of the work product of the entire DFS laboratory.

---

[16] The Memorandum of Activity/Interview received from DC-OIG and attached to the March 18, 2021, Final Audit Report contain personal identifying information that the USAO redacted prior to uploading the materials to the DFS Disclosures folder on USAfx. The USAO also redacted a small portion of one of the Memorandum of Activity/Interview at the request of DC-OIG (USAO- 008991-008993).

Separately, the United States Attorney's Office provided DC-OIG with a Interview Memorandum summarizing a December 7, 2020, interview of Michael Mulderig by USAO-DC Homicide Chief David Gorman, Deputy Chief Michael Spence and Supervisory Special Agent Bryan Molnar (USAO-009006-009007).

Because the audit report summarizes many of the interviews conducted by DC-OIG and the emails collected by DC-OIG, and because the source documents provided to the USAO by DC-OIG are available in the DFS Disclosures folder on USAfx, a further summary of these materials is not included herein.

The DC-OIG Memorandum of Activity/Interview also contain statements from Confidential Source 2 and Jonathan Fried regarding a meeting with FEU staff at which DFS General Counsel Todd Smith[17] stated, among other things, that the OIG investigation was unlawful and provided guidance regarding how DFS employees should respond to requests from DC-OIG for information and/or interviews (USAO-008996-97, -009026-27).

A March 31, 2021, DC-OIG Memorandum of Activity/Interview of an Interview of Confidential Source 3 ("CS3") "includes new allegations of examination errors in a different DFS forensic unit [the Latent Fingerprint Unit] and potential concealment of those errors by DFS managers and senior leadership" (USAO-010112). Specifically, CS3 alleges that "DFS recently discovered a 'systemic issue' with [Fingerprint Analysis Unit] analysts making examination errors and DFS managers are trying to cover up these issues as well" (USAO-010113).

On April 2, 2021, the ANSI National Accreditation Board ("ANAB") informed DFS that it was "immediately suspending the laboratory's accreditation and initiating the process for withdrawal of accreditation" (USAO-010115). The letter informed DFS that "ANAB has received credible evidence that the D.C. Department of Forensic Sciences, Forensic Science Laboratory Division, has deliberately concealed information from the ANAB assessment team, violated accreditation requirements, engaged in misrepresentations and fraudulent behavior, and engaged in conduct that brings ANAB into disrepute" (USAO-010115).

5. **Quality Corrective Action Reports**

According to DFS's Practices for Quality Corrective Action, "[q]uality corrective action shall be implemented when nonconforming work or departures from the policies and procedures in the management system or technical operations have been identified and evaluated for frequency and impact."[18] As part of its practices for Quality Corrective Actions, DFS generates Quality Corrective Action Reports (Q-CARs). On February 5, 2020, DFS provided the USAO with copies of Q-CARs that DFS said represented its collection of Q-CARs through that date. It does not appear that DFS provided underlying documentation for these Q-CARS, to the extent such documentation exists. DFS subsequently provided the USAO with additional Q-CARs on May 11, August 18, November 19, December 14, and December 16, 2020. Again, it does not appear that DFS provided underlying documentation for these Q-CARs, to the extent such documentation exists. On November 19, 2020, DFS provided the USAO with its own index of QCARs (USAO-008706-26) and an explanation for some of the gaps within the chronological numbering system (*see* USAO-008752-58).

---

[17] The Memorandum of Activity/Interview of Confidential Source 2 indicates that Todd Smith stated he was speaking on behalf of Dr. Smith, who could not attend the meeting (USAO-008997).

[18] *See* DFS Department Operations Manual (DOM) 07-1275-10: Practices for Quality Corrective Actions, *available at h*ttps://dfs.dc.gov/sites/default/files/dc/sites/dfs/publication/attachments/DOM%20-%20Practices%20for%20Quality%20Corrective%20Actions.pdf.

13

On August 28, 2020, the Honorable Juliet J. McKenna, Presiding Judge of the Criminal Division of D.C. Superior Court and the Honorable Danya A. Dayson, Deputy Presiding Judge of the Criminal Division of D.C. Superior Court issued a Standing Order authorizing the government to disclose Q-CARs generated by DFS in cases pending before the Superior Court of the District of Columbia. The Standing Order further provides that "[a] recipient may use the QCAR and the information contained therein only for purposes related to the litigation of criminal cases or juvenile delinquency cases." However, no such protective order has been issued in all District Court cases.

Nevertheless, the government is providing you with a list of Q-CARS in the index, to show what the government has received from DFS as of the date of this letter. To the extent that the government receives any additional Q-CARs from DFS, it expects to produce them, prior to trial, at the same time it produces information from MPD's Personnel Performance Management System (PPMS). In order to review the Q-CARs we will need to issue a protective order, as information in these Q-CARs may constitute records maintained by DFS related to employment and are thus protected by the Privacy Act of 1974, 5 U.S.C. § 522a(b)(11).

***

If you have any questions, or need assistance with USAfx, please contact the undersigned Assistant United States Attorney.

    Sincerely,

    CHANNING D. PHILLIPS
    Acting United States Attorney

By:    */s/ Mary L. Dohrmann*
    MARY L. DOHRMANN
    Assistant United States Attorney