## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Action No.: 21-0059 (RC) |
| | : | |
| WINSTON KELLY, | : | Re Document Nos.:   43, 44 |
| | : | |
| Defendant. | : | |

## <u>MEMORANDUM OPINION</u>

### DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT; GRANTING IN PART AND DENYING IN PART THE GOVERNMENT'S MOTION IN LIMINE

## I.  INTRODUCTION

Defendant Winston Kelly is charged with one count of possessing a firearm and ammunition with knowledge that he had previously been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1).  *See* Indictment, ECF No. 10.  Defendant moves to dismiss the indictment for failure to state an offense.  *See* Mot. Dismiss, ECF No. 44.  The Government moves in limine under Federal Rule of Evidence 609 for a ruling permitting it to impeach Defendant, should he testify, with his prior conviction.  *See* Mot. Impeach, ECF No. 43.  The Court heard argument on the parties' motions on November 21, 2022.  For the reasons set forth below, Defendant's motion is denied and the Government's motion is granted in part and denied in part.

## II.  FACTUAL BACKGROUND

According to the Statement of Facts attached to the Complaint by which Defendant was originally charged, just after midnight on January 1, 2021, officers from the Metropolitan Police Department observed a man that they allege was Defendant "fire one round of ammunition into the air from a handgun in his right hand."  Statement of Facts, ECF No. 1-1.  After a brief chase,

the man allegedly fell down near a sewer, at which point an officer observed him slide an object

into the sewer.  *Id.*  After removing the manhole cover, the officers recovered a loaded black

semi-automatic pistol from the sewer.  *Id.*  Defendant was previously convicted in 2011 of

malicious disfigurement in the Superior Court for the District of Columbia, for which he was

sentenced to thirty months of imprisonment and three years of supervised release.  *See United

States v. Winston Kelly*, No. 2010 CF3 023720 (D.C. Super. Ct. 2011).

### III.  DEFENDANT'S MOTION TO DISMISS INDICTMENT

18 U.S.C. § 922(g)(1) makes it a crime for "any person . . . who has been convicted in

any court of, a crime punishable by imprisonment for a term exceeding one year . . . to possess in

or affecting commerce, any firearm or ammunition."  As relevant here, 18 U.S.C. § 921(a)(20)

excludes from the definition of a "crime punishable by imprisonment for a term exceeding one

year" any conviction "for which a person . . . has had civil rights restored."  Defendant moves to

dismiss the indictment on grounds that his civil rights have been restored within the meaning of

section 921(a)(20), so the conduct described in the indictment does not constitute a crime.  *See*

Mot. Dismiss at 1.  In response, the Government argues the indictment was sufficiently pled and

that Defendant has not had his civil rights restored within the meaning of section 921(a)(20).  *See*

Gov't's Opp'n Mot. Dismiss ("Gov't's Opp'n") at 5–14, ECF No. 46.

### A.  Legal Standard

Criminal defendants "may raise by pretrial motion any defense, objection, or request that

the court can determine without a trial on the merits," including a motion to dismiss an

indictment because it fails to state an offense.  Fed. R. Crim. P. 12(b)(1), 12(b)(3)(B)(v).  The

Court "must decide every pretrial motion before trial" except on a showing of "good cause."  *Id.*

(12)(d).  An indictment must contain "a plain, concise, and definite written statement of the

essential facts constituting the offense charged." *Id.* 7(c).  When considering a motion to dismiss

for failure to state an offense, "the court is limited to reviewing the face of the indictment."

*United States v. Lewis*, 2021 WL 2809819 at *3 (D.D.C. July 6, 2021).  "The operative question

is whether the[ ] allegations, if proven, are sufficient to permit a jury to find that the crimes

charged were committed." *United States v. Payne*, 382 F. Supp. 3d 71, 74 (D.D.C. 2019)

(cleaned up).

## B.  Analysis

Defendant moves to dismiss the indictment for failure to state an offense, arguing that his

civil rights have been restored within the meaning of section 921(a)(20), and therefore that the

Government cannot show that he has committed a qualifying predicate "crime punishable by

term exceeding one year" under section 922(g)(1).  *See* Mot. Dismiss at 1.  He also argues in the

alternative that the term "civil rights" in section 921(a)(20) is ambiguous so the rule of lenity

should apply.  *See* Def.'s Reply at 4–5, ECF No. 51.  In response, the Government argues that

the indictment was sufficiently pled and that Defendant has not had his civil rights restored

within the meaning of section 921(a)(20).  *See* Gov't's Opp'n at 5–14.

The Government first argues that, whether or not Defendant's civil rights were in

fact restored, Defendant's motion should be denied because the indictment is sufficient on its

face.  *See id.* at 5–9.  It argues that the "civil rights restoration exception in § 921(a)(2[0]) is not

an element of § 922(g)(1)" but rather "an affirmative defense for which the defendant carries the

burden," and cites cases from six circuits for the proposition.  *Id.* at 6–7.  The cases cited by the

Government disagree about whether to call the civil rights exception an affirmative defense or a

"legal definition," but they agree that, while the Government has no affirmative obligation to

plead the absence of civil rights restoration on the face of the indictment, a defendant seeking to

challenge the sufficiency of a predicate offense on grounds that his civil rights were restored

bears only the burden of production, and once that burden is met the Court properly decides the

question as a matter of law.[1]

Defendant's motion claims, with supporting factual allegations, that he has had his civil

rights restored and therefore that the indictment fails to state an offense under section 922(g)(1)

because he had not been convicted of a qualifying predicate felony. *See generally* Mot. Dismiss.

Defendant thus provides a "basis for the motion . . . [to be] determined without a trial on the

merits." Fed. R. Crim. P. 12(b)(3). Accordingly, consistent with the approach taken by courts in

this Circuit in similar cases, the Court proceeds to consider whether Defendant's civil rights were

restored under section 921(a)(20) as a matter of law. *See, e.g.*, *Payne*, 382 F. Supp. 3d at 74

("Even if the factual allegations against [defendant] are proven true, the expungement of his

prior felonies make a conviction under 18 U.S.C. § 922(g) impossible. For this reason, the Court

must dismiss the indictment."); *see also United States v. Bost*, 87 F.3d 1333, 1334 (D.C. Cir.

1996) ("The phrase 'crime punishable by imprisonment for a term exceeding one year' is defined

in such a manner as to exclude certain categories of individuals from prosecution under section

922(g)."); *United States v. Hite*, 950 F. Supp. 2d 23, 25–26 (D.D.C. 2013) ("Claims that a statute

---

[1] For example, in *United States v. Flower*, 29 F.3d 530 (10th Cir. 1994), the Tenth Circuit held that "[n]othing in the plain language of §§ 922(g)(1) or 921(a)(20) suggests that the § 921(a)(20) definition constitutes an affirmative defense" and "[a]s such, § 921(a)(20) is simply a legal definition that defines 'conviction for a term exceeding one year.'" *Id.* at 534. It concluded that "[b]ecause § 921(a)(20) is definitional, it is the trial judge's responsibility to determine as a matter of law whether a prior conviction is admissible in a § 922(g)(1)." *Id.* But "as a practical matter," the court noted that the "defendant ordinarily will be much better able to raise the issue" so "it will be up to the defendant to challenge the admissibility of such conviction" and "[a]ny such challenge must be made with specificity." *Id.* at 535*; accord United States v. Bartelho*, 71 F.3d 436, 440 (1st Cir. 1995) ("We are persuaded by the approach of *United States v. Flower*. The significance of § 921(a)(20)'s definitional nature is that the trial judge bears the responsibility of determining as a matter of law whether a prior conviction is admissible in a § 922(g)(1) case.").

named in an indictment does not proscribe the alleged conduct are generally treated as claims that the indictment fails to state an offense." (internal quotation omitted)).

Though it has not defined the precise boundaries of the term, the D.C. Circuit has explained that "[i]t is generally agreed that the 'civil rights' referred to in section 921(a)(20) are the rights to vote, to hold elective office, and to serve on a jury." *Bost*, 87 F.3d at 1335 (citations omitted); *see United States v. Morrell*, 61 F.3d 279, 280–81 (4th Cir. 1995) (explaining that "restoration of civil rights need not be complete, but it must be substantial" and "generally includes 'the right to vote, the right to hold public office, and the right to serve on a jury.'" (citation omitted)); *see also Payne*, 382 F. Supp. 3d at 75 ("In determining how to interpret 'restoration of civil rights,' courts must grapple with important questions the statute leaves unresolved.  Which civil rights must be restored for Section 921 to apply?  How many of these rights must be restored?").  "[T]he law of the State of conviction, not federal law, determines the restoration of civil rights as a rule." *Caron v. United States*, 524 U.S. 308, 316 (1998) ("Restoration of the right to vote, the right to hold office, and the right to sit on a jury turns on so many complexities and nuances that state law is the most convenient source for the definition."). States may restore civil rights by a "wide variety of practices," including "by statute." *Id.*; *see Payne*, 382 F. Supp. at 75–76 (explaining that courts look to the "whole of state law" to evaluate whether civil rights were restored by operation of statute).

The Government concedes and the Court agrees that Defendant's right to vote was restored.[2]  *See* Gov't's Opp'n at 9–10.  Accordingly, the Court focuses on whether his rights to hold elected office and serve on a jury also were restored.

---

[2] In 2020, District of Columbia passed a law repealing the requirement that a "qualified elector" not be incarcerated for a felony, but at the time Defendant was convicted in 2011, his right to vote was revoked upon his incarceration and restored upon his release. *See* Restore the

1.  Right to Hold Office

Under D.C. law, residents must meet the definition of a "qualified elector" in order to register to vote and must be qualified electors who are registered to vote in order to hold elected office.  *See* D.C. Code §§ 1–1001.07(a), 1–1001.08(b)(1)(A).  Defendant argues that, because D.C. law at the time he was convicted in 2011 made him ineligible to be a qualified elector while incarcerated but restored eligibility upon release, his right to hold office was restored upon his release in 2013.[3]  *See* Mot. Dismiss at 5.

The Government argues that, because the D.C. Code only permits qualified electors who are in fact registered to vote to run for office, and because Defendant "has not provided information confirming that he was a registered voter prior to his term of incarceration," he therefore "never lost that right under D.C. law" so it could not have been "restored to him." Gov't's Opp'n at 10; *see* D.C. Code § 1–204.02.  This kind of use-it-or-lose-it argument is unpersuasive, as by this logic no unregistered resident, regardless of criminal history, could be said to have the "right" to vote.  The fact that an individual must take procedural steps in order to exercise a right does not somehow mean that the right does not exist.  For example, an individual's rights to hold a public demonstration or get married are no less for bureaucratic requirements to obtain a permit or license to do so.  *See Cox v. State of New Hampshire*, 312 U.S. 569, 574 (1941); *Obergefell v. Hodges*, 576 U.S. 644, 675 (2015).  The Government cites a single case to support its argument, *Logan v. United States*, 552 U.S. 23 (2007), but that case involved a different situation in which the defendant challenged his sentence under Armed Career Criminal Act based on three state misdemeanor convictions that "occasioned no loss of

Vote Amendment Act of 2020, D.C. Law 23–277 § 2(a)(1)(B) (repealing the requirement that a "qualified elector" not be "incarcerated for a crime that is a felony in the District").

    [3] *See supra* note 2.

civil rights." *Id.* at 26.  *Logan* thus says nothing about whether a citizen somehow waives a right

by declining to exercise it before being convicted of a crime that by law would occasion its loss.

The Government's argument is also internally inconsistent: it concedes that Defendant's right to

vote was restored regardless of his registration status, but simultaneously argues that his right to

hold office was not restored because he was not registered to vote.  Regardless, Defendant

represents, with supporting documentation from the D.C. Board of Elections, that he in fact was

registered to vote as of 2006.  *See* Def.'s Suppl. Mot. Dismiss, ECF No. 54.  Accordingly, the

Court finds that Defendant's right to hold elected office was restored.

## 2.  Right to Serve on a Jury

Some background is required to analyze whether Defendant's right to serve on a jury has

been restored.  The D.C. Code provides, with respect to both petit and grand juries, that "[a]n

individual shall not be qualified to serve as a juror . . . if that individual has been convicted of a

felony . . . except that an individual disqualified for jury service by reason of a felony conviction

may qualify for jury service not less than one year after the completion of the term of

incarceration . . . following appropriate certification under procedures set out in the jury system

plan."  D.C. Code § 11–1906(b)(2).  The Jury System Plan for the Superior Court of the District

of Columbia ("Jury System Plan") is developed by the judges of the D.C. Superior Court (the

"Board of Judges") to provide for the "random selection and service of grand and petit jurors."

D.C. Code §§ 11–1904(a); 11–1902(1).  The D.C. Court of Appeals has interpreted section

11-1906(b)(2)'s "not less than one year" language to create a floor, not a ceiling, such that the

"Board of Judges may lift the exclusion after one year (but not less) or later, as it sees fit."  *See*

*Carle v. United States*, 705 A.2d 682, 684 (D.C. Ct. App. 1998).

In 2020, the Board of Judges amended the Jury System Plan to permit individuals convicted of a felony to serve on petit juries as soon as one year after completion of their sentence, while retaining a ten-year waiting period for grand jury service. *See* Press Release, District of Columbia Courts, DC Superior Court Changes Jury Plan to Reduce Time Before Returning Citizens Can Serve as Jurors (June 15, 2020), https://newsroom.dccourts.gov/press-releases/dc-superior-court-changes-jury-plan-to-reduce-time-before-returning-citizens-can-serve-as-jurors. Accordingly, section 6(g) of the Jury System Plan, as amended, provides that

> [n]o individual or class of individuals may be disqualified, excluded, excused or exempted from service as a juror except . . . [p]ersons convicted of a felony, except said individuals may qualify for petit jury service one (1) year after the completion of their term of incarceration, probation, supervised release or parole and may qualify for grand jury service ten (10) years after the completion of their term of incarceration, probation, supervised [*sic*] or parole.

Jury System Plan § 6(g). Section 7 of the Jury System Plan further provides that,

> [a]ny juror convicted of a felony and who certified on the juror qualification form that the time required by Section 6(g) has passed since the completion of the juror's incarceration, probation, supervised release or parole, or that his civil rights have been restored, may be deemed qualified by the Clerk to serve as a grand or petit juror based on the juror's certification and, if necessary, other competent evidence.

*Id.* § 7.

### a.  Petit Jury

The Government argues that, because the D.C. Code and Jury System Plan use "permissive" language, they do not "automatically restore one's jury service right." Gov't's Opp'n at 11. On a close reading, the Court disagrees. Section 11–1906(b) of the D.C. Code lays out the qualification requirements for prospective jurors. The Government points to the second paragraph of that subsection, which precludes qualification as a juror "if that individual has been convicted of a felony . . . except that an individual . . . *may qualify* for jury service not less than one year after the completion of a term of incarceration . . . following appropriate certification under procedures set out in the jury system plan." D.C. Code § 11–1906(b)(2) (emphasis added);

Gov't's Opp'n at 10–11.  But this must be read in conjunction with the first paragraph of the subsection, which states that an individual "shall be qualified to serve as a juror if that individual – (A) is a resident of the District of Columbia; (B) is a citizen of the United States; (C) has attained the age of 18 years; and (D) is able to read, speak and understand the English language." D.C. Code § 11–1906(b)(1) (emphasis added).  The Clerk determines whether jurors meet these criteria "on the basis of information provided in the juror qualification form and any other competent evidence."[4]  § 11–1906(b)(3).  Thus, the "may qualify" language in the second paragraph is properly interpreted to reflect that a prospective juror with a non-disqualifying felony conviction still may be found unqualified to serve on a jury for failure to meet the criteria listed in the first paragraph, as determined by the Clerk based on the juror qualification form or other competent evidence.  It does not, as the Government suggests, vest the Clerk with discretion to make qualification decisions disconnected from those criteria.  In that way, the second paragraph's language merely places prospective jurors with non-disqualifying felony convictions back in the same situation as any other prospective juror.

Nothing in the Jury System Plan changes this interpretation.  The Government points to section 7's provision that a "juror convicted of a felony and who certified on the juror qualification form that the time required by Section 6(g) has passed . . . or that his civil rights have been restored, *may* be deemed qualified by the Clerk to serve as a grand or petit juror based on the juror's certification."  Jury System Plan § 7 (emphasis added); Gov't's Opp'n at 11.  But again, this language simply permits the Clerk to evaluate certain members of an otherwise categorically barred group for compliance with the general qualification criteria.  If the same

---

[4] The juror qualification form is sent to a randomly selected subgroup of individuals from the master jury list, which is comprised of, essentially, all known D.C. residents irrespective of criminal history.  *See* Jury System Plan §§ 2, 3, 5, 9.

sentence used the word "shall" instead of "may," it would require the Clerk to deem qualified all those with non-disqualifying felony convictions regardless of whether they otherwise meet the general qualification criteria, circumventing section 11–1906(b)(1).

This understanding also comports with what the Board of Judges believed they were doing when they changed the Jury System Plan to its current formulation. *See* Press Release, District of Columbia Courts, *supra* at 8 (quoting D.C. Superior Court Chief Judge Robert Morin's statement, on behalf of the Board of Judges, that, "[w]e are pleased to eliminate this barrier to full participation by returning citizens"). Indeed, following the November 21, 2022 motions hearing, the Government "spoke with a representative from the Jury Clerk's Office for the Superior Court of the District of Columbia" and "was informed that a potential juror with a felony conviction becomes qualified for service automatically once the requisite time period . . . has passed." Gov't's Suppl. Opp'n, ECF No. 55. Accordingly, the Government now acknowledges that "such individuals need not submit any additional information or take any further action to attain such qualification." *Id.*

Therefore, because more than a year has passed since Defendant completed his sentence, his right to serve on a petit jury has been restored.

### b. Grand Jury

Defendant's right to serve on a grand jury, however, has not been restored. Recall that, unlike the one-year waiting period for petit jury service, section 6(g) of the Jury System Plan provides that "[p]ersons convicted of a felony . . . may qualify for grand jury service ten (10) years after completion" of their sentence. Defendant appears to concede that, because ten years had not elapsed between the time he completed his prior sentence and his arrest on the present charge, his right to serve on a grand jury has not been restored. *See* Mot. Dismiss at 5–7

(arguing only that Defendant's right to "serve on petit juries" was restored); Def.'s Reply at 1

(arguing only that the right to serve on a grand jury is not a relevant civil right for purposes of 18

U.S.C. 920(a)(20)).[5]  Instead, Defendant presses two arguments.  First, he argues that it does not

matter if his right to serve on a grand jury has been restored because that is not a "core" civil

right for purposes of section 921(a)(20).  Def.'s Reply at 1–3.  Second, he argues in the

alternative that the meaning of "civil rights" as used in the statute is ambiguous so the Court

should apply the rule of lenity.  *Id.* at 4–5.

       To support his argument that a defendant can have his civil rights restored within the

meaning of section 921(a)(20) despite not being eligible to serve on a grand jury, Defendant

points to the facts that many states do not require grand jury indictments to initiate criminal

prosecutions, and that the Supreme Court has found such procedures constitutionally

permissible.  *Id*. at 2.  This argument would perhaps have more force if the state of conviction in

this case was among those that do not require indictment by grand jury.  Section 921(a)(20)

provides that "[w]hat constitutes a conviction of a [crime punishable by imprisonment for a term

exceeding one year] shall be determined in accordance with the law of the jurisdiction in which

the proceedings were held."  18 U.S.C. § 921(a)(20).  The Supreme Court, recognizing the

"complexities and nuances" on which restoration of civil rights may turn, has interpreted this

statutory language to mean that "the law of the State of conviction, not federal law, determines

---

[5] Section 7 of the Jury System Plan has a disjunctive construction that arguably introduces some ambiguity as to how it interacts with the waiting periods required under section 6(g).  *See* Jury System Plan § 7 ("Any juror convicted of a felony and who certified on the juror qualification form that the time required by Section 6(g) has passed  . . .  *or* that his civil rights have been restored, may be deemed qualified by the Clerk to serve as a grand or petit juror . . . ." (emphasis added)).  The Court invited the parties to present argument on this point at the November 21, 2022 motions hearing and permitted the parties to file supplemental briefing on this point after the hearing, *see* Min. Order (Nov. 16, 2022); Min. Order (Nov. 21, 2022), but the parties declined.

the restorations of civil rights[.]" *Caron*, 524 U.S. at 316.  As noted above, the D.C. Circuit has

explained that "[i]t is generally agreed that the 'civil rights' referred to in section 921(a)(20) are

the rights to vote, to hold elective office, and to serve on a jury." *Bost*, 87 F.3d at 1335 (citing

*United States v. Caron*, 77 F.3d 1, 2 (1st Cir. 1996); *United States v. Cassidy*, 889 F.2d 543, 549

(6th Cir. 1990); *United States v. Thomas*, 991, F.2d 206, 212–13 (5th Cir. 1993)).[6]  D.C. law

requires that, barring waiver, any offense punishable by more than a year in prison be prosecuted

by grand jury indictment.  *See* D.C. Code § 23-301; D.C. Super. Ct. R. Crim. P. 7(a).  This

supports the intuitive conclusion that the right to serve on a grand jury is encompassed within the

meaning of the right to "serve on a jury" for purposes of evaluating civil rights restoration under

D.C. law.  *Bost*, 87 F.3d at 1335.

Defendant has not raised, and the Court has not otherwise found, any direct authority for

the contrary proposition that the right to sit on a grand jury should be excised from the meaning

of right to serve on a jury.[7]  However, though not raised by Defendant, the Court has identified

out-of-Circuit authority, in the context of restrictions on petit jury service, that arguably offers

limited, indirect support to his position.  In 1992, the Sixth Circuit found that, despite a Michigan

statute that at the time explicitly restored the right to serve on a jury to those who completed

sentences for felony convictions, Michigan rules of procedure requiring trial courts to dismiss

---

[6] *See also United States v. Horodner*, 91 F.3d 1317, 1319 (9th Cir. 1996) (finding that
section 921(a)(20) was not satisfied where defendant had his rights to vote and hold office
restored but not his right to sit on a jury); *United States v. Hassan El*, 5 F.3d 726, 734 (4th Cir.
1993) (section 921(a)(2) not satisfied where defendant had not regained right to serve on a jury);
*United States v. Flower*, 29 F.3d at 536 (same); *United States v. Essig*, 10 F.3d 968, 976 (3d Cir.
1993) (superseded on other grounds by statute) (same).

[7] To the best of the Court's knowledge, just two states—California and Oregon—appear
to have similarly differential rules in force for restoration of the right to serve on petit and grand
juries.  *See* Cal. Civ. Proc. §§ 203(a)(9)–(10); Cal. Penal Code § 893(b)(3); Or. Rev. Stat.
§ 10.030(2)–(3).  The Court has identified no cases from these jurisdictions that consider the
interaction of those differential rules with section 921(a)(20).

such jurors in the face of for-cause challenges encumbered that right such that section 921(a)(20) was not satisfied. *See United States v. Driscoll*, 970 F.2d 1472 (6th Cir. 1992).[8]  A couple years later, the intermediate state court of appeals in Michigan, in the different context of an appeal from the denial of a motion for new trial in a product liability suit, disagreed with *Driscoll*'s reasoning and found that trial courts retain discretion in certain civil cases to reject for-cause challenges to prospective jurors with felony convictions. *See Froede v. Holland Ladder & Mfgr. Co.*, 207 Mich. App. 127 (Mich. Ct. App. 1994).[9]  Several years later, the Sixth Circuit found that *Froede* controlled its consideration of civil rights restoration under section 921(a)(20). *See Hampton v. United States*, 191 F.3d 695, 701 (6th Cir. 1999).  It therefore held, contrary to *Driscoll*, that Michigan restores the right to serve on a jury to a felon who completes his

---

[8] More specifically, the Michigan jury selection statute in force at the time provided that "a juror is qualified if, among other things, not '*under sentence* for a felony at the time of jury selection.'" *Froede v. Holland Ladder & Mfgr. Co.*, 207 Mich. App. 127, 130 (Mich. Ct. App. 1994) (quoting MICH. COMPL. LAWS § 600.1307a(1)(e)) (emphasis added).  However, a Michigan rule of civil procedure applicable at the time provided that "a party [could] challenge for cause a juror that ha[d] 'been convicted of a felony.'" *Id.* (quoting Mich. Court Rule 2.511(D)(2)).  A "line of federal cases" in the early 1990s interpreted this framework "as not restoring a felon's civil right to serve as a juror." *Id.* at 131.  Most relevant, in *Driscoll*, the Sixth Circuit, resolving disagreement among district courts, found that, despite the fact that the jury selection statute only disqualified those "under sentence" at the time of jury selection, because the procedural rules "require 'a court to excuse a juror whenever a challenge for cause clearly falls within one of the enumerated grounds,'" a prospective juror who completed a sentence for a felony conviction "would be automatically dismissed from jury service once either party brought his former conviction to the attention of the court in either a civil or a criminal case." *Driscoll*, 970 F.2d at 1479 (citation omitted).  As such, the court found that this encumbrance on the defendant's right to sit on a jury precluded a finding that his civil rights were restored within the meaning of section 921(a)(20). *Id.*

[9] The Michigan Court of Appeals "disagree[d] with this line of federal cases holding that a former felon's civil right to serve as a juror is not restored once the felon is no longer under sentence." *Froede*, 207 Mich. App. at 131.  The court explained that while the state's procedural rules require "that a trial court in a criminal case excuse a juror challenged for cause under any of the grounds listed in [Mich. Court Rule 2.511(D)(2)], there is no similar requirement in a civil case." *Id.* at 133.

sentence, based on *Froede*'s holding that dismissal of prospective civil jurors challenged for cause based on felony convictions is not always automatic.  *See id.* at 702.[10]

Essentially, this line of cases represents an attempt to harmonize a Michigan statute explicitly restoring the right of those who complete a felony sentence to serve on juries with procedural rules conditionally encumbering that right by permitting for-cause challenges.[11] By contrast, here, the Jury System Plan explicitly and unconditionally does *not* restore the right to serve on a grand jury until ten years after the sentence is completed, a rule even more restrictive than the type of automatic for-cause dismissal rule that the *Driscoll* court found would preclude application of section 921(a)(20).[12]  D.C's restriction on felon grand jury service applies without any condition precedent like a party choosing to raise a for-cause challenge.  It also affords no discretion to a judge or anyone else to circumvent that restriction—the issue at the heart of the *Hampton* line of cases.  *See United States v. Estrella*, 104 F.3d 3, 7 (1st Cir.

---

[10] The Sixth Circuit found that its conflict of laws precedent required it to "accept *Froede*," and as such that it was "forced to conclude that Michigan restores a felon's right to sit on a jury upon completion of his sentence."  *Id.* at 702.

[11] It bears mention that, perhaps recognizing the internal tension in this framework, the Michigan legislature "effectively abrogated *Hampton*" by amending its juror qualification statute to disqualify those "convicted of a felony," discarding the previous "under sentence" formulation.  *United States v. Scantland*, No. 2:04-cr-80773, 2:08-cv-13097, 2010 WL 6571943, at *17 & n.8 (E.D. Mich. Dec. 7, 2010) (internal quotation and citation omitted).

[12] In addition, whatever bearing the *Hampton* line of cases has on the present case is limited by the fact that, unlike D.C., Michigan does not require indictment by grand jury.  *See People v. Glass*, 464 Mich. 266, 277–79 (Mich. 2001) (explaining that, in Michigan, criminal prosecutions can be initiated by complaint, information, or indictment, and "[t]here is no state constitutional right to indictment by grand jury").  And while D.C. law permits parties to challenge "an individual juror on the ground that the juror is not legally qualified," D.C. Super. Ct. R. Crim. P. 6(b)(1), Michigan law permits "[n]o challenge to . . . any person summoned as a grand juror," except "on the ground that he is the prosecutor or complainant" of the accused, MICH. COMPL. LAWS §§ 767.13–14.  *See People v. Edmond*, 86 Mich. App. 374, 398 (Ct. App. Mich. 1978) (citing §§ 767.13–14 for the proposition that "the fact that juror No. 7 was a cousin to four of the witnesses, by itself, should not operate as a disqualification").

1997) (distinguishing *Driscoll*, before *Hampton* was decided, on grounds that "Michigan court rules require automatic exclusion of felons as jurors whenever a party so moves," while the less "hostile" Massachusetts rules merely permit "the trial judge to dismiss the ex-felon out of hand whenever his record, or the nature of the case, warrants that course").  In this way, the *Hampton* line of cases in fact casts in starker relief the binding and unequivocal limitation D.C. places on the right of those with felony convictions to "serve on a jury."  *Bost*, 87 F.3d at 1335.

More generally, while there are of course meaningful differences in the roles served by petit and grand juries, Defendant offers no authority to support, and the Court can discern no basis to accept, the general proposition that service on the latter is somehow of lower civic stature.  *See* D.C. Code § 11-1901 (explaining, in the "[d]eclaration of policy" in the first section of a chapter governing "Juries and Jurors," that "all qualified individuals shall have the opportunity to be considered for service on *grand and petit juries* in the District of Columbia and shall be obligated to serve as jurors when summoned for that purpose." (emphasis added)); *Vasquez v. Hillery*, 474 U.S. 254, 263 (1986) ("In the hands of the grand jury lies the power to charge a greater offense or a lesser offense; numerous counts or a single count; and perhaps most significant of all, a capital offense or a noncapital offense—all on the basis of the same facts. Moreover, '[t]he grand jury is not bound to indict in every case where a conviction can be obtained.'" (citation omitted)); Kevin K. Washburn, *Restoring the Grand Jury*, 76 FORDHAM L. REV. 2333, 2359 (2008) (explaining the grand jury's "comparative advantage" over a petit jury that it may exercise "legitimate discretion" to decline to indict, for example "if the local community disagrees with the content or application of the laws"); Roger A. Fairfax, Jr., *Grand Jury Discretion and Constitutional Design*, 93 CORNELL L. REV. 703, 760 (2008) (explaining that "[t]he grand jury, sitting as a body of the accused's peers and representing the voice of the

community, is uniquely positioned to exercise" indicting discretion); *cf. Pierre v. State of Louisiana*, 306 U.S. 354, 356–58 (1939) (rejecting state court's finding that, because the grand jury merely brings someone before a petit jury for trial, defendant's constitutional rights were not implicated by systematic exclusion of black grand jurors).[13]   The Court thus has no basis to find that D.C. would in one breath say that convicted felons are not sufficiently rehabilitated to serve on grand juries, but in the next that they are sufficiently rehabilitated to possess firearms.  *See United States v. Jennings*, 323 F.3d 263, 268 (4th Cir. 2003) (explaining that "the purpose of [section 921(a)(20)] was to accommodate 'a state's judgment that a particular person or class of persons is, despite a prior conviction, trustworthy to possess firearms'" (quoting *McGrath v. United States*, 60 F.3d 1005, 1009 (2d Cir. 1995)).

Instead, fidelity to D.C.'s grand jury requirement and juror qualification laws, in view of the purpose and powers of the grand jury, precludes a finding that Defendant's right to serve on a jury was "substantially" restored.  *Estrella*, 104 F.3d at 6 (concluding that "the test of section 921(a)(20)" is that each of the rights to vote, to hold elected office, and to serve on a jury must be "substantially," albeit "not perfectly," restored).  In turn, the Court cannot find as a matter of law that Defendant's civil rights were restored within the meaning of section 921(a)(20).  *See Morrell*, 61 F.3d at 281 ("[T]he loss of the right to sit on a jury 'precludes a finding of a

---

[13] Defendant also appeals to Merriam-Webster's Dictionary to argue that, because the word "civil" means "of citizens in their ordinary capacity," and grand juries are privy to secret information, it somehow follows that the right to sit on a grand jury is not a civil right, as only the rights to vote, hold public office, and sit on a petit jury "are the quintessential activities open to a citizen."  Def.'s Reply at 3.  Setting aside that public office holders and petit jurors also may be privy to secret or sealed information, Defendant's conclusory argument suffers from the obvious infirmity that the right to sit on a grand jury is distinct from the privileges and responsibilities of those ultimately selected for service.  *See* D.C. Code § 11-1901 ("[A]ll qualified individuals shall have the opportunity *to be considered* for service on grand and petit juries in the District of Columbia . . . ." (emphasis added)).

substantial restoration of civil rights necessary to satisfy § 921(a)(20).'" (citation omitted));

*Flower*, 29 F.3d at 536 ("The acknowledgement that [defendant] has not had restored his right to

sit on a jury is an acknowledgement that his civil right have not adequately been restored . . .").[14]

## IV.  GOVERNMENT'S MOTION TO IMPEACH WITH PRIOR CONVICTION

Recall that the Government uses Defendant's conviction in D.C. Superior Court for

malicious disfigurement as the predicate felony for purposes of section 922(g)(1).  *See* Statement

of Facts; *United States v. Winston Kelly*, No. 2010 CF3 023720 (D.C. Super. Ct. 2011).  While

the Government did not describe the offense conduct in its motion, its memorandum in support

of pretrial detention explains that the offense arose out of a fight between Defendant and his

girlfriend.  *See* Gov't's Mem. Supp. Pretrial Detention at 4, ECF No. 5.  During the fight,

Defendant's girlfriend locked herself in their shared home, at which point Defendant "began

kicking on the front door . . . until he was able to force it open."  *Id.*  "Once inside, [Defendant]

immediately attacked [her] . . . put his hand around [her] neck, pushed her against the wall, and

shocked her."  *Id.*  During the struggle, Defendant "bit down on her mouth, biting off

approximately 75% of her lips."  *Id.*  The Government moves for a ruling that it be permitted to

impeach Defendant by cross-examining him about this prior offense if he testifies at trial.

---

[14] Defendant also argues that the rule of lenity should compel a decision in his favor. Def.'s Reply at 4–5.  But this rule, under which "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity," is a "canon of last resort."  *Guedes v. ATF*, 920 F.3d 1, 27 (D.C. Cir. 2019) (quotations omitted), *cert. denied*, 140 S. Ct. 789 (2020).  That is, it requires "grievous ambiguity or uncertainty" that the court is unable to resolve even after "seizing everything from which aid can be derived."  *Muscarello v. United States*, 524 U.S. 125, 138–39 (1998) (quotations omitted).  The Court has sufficiently resolved any ambiguity in section 921(a)(20) relevant to the present motion using ordinary interpretive tools, so application of the rule of lenity is not warranted.  *Id.* at 138 ("The simple existence of some statutory ambiguity . . . is not sufficient to warrant application of [the rule of lenity], for most statutes are ambiguous to some degree.").

## A.  Legal Standard

Under Federal Rule of Evidence 609, evidence of conviction of a crime punishable by imprisonment for more than a year "must be admitted" against a defendant-witness "if the probative value of the evidence outweighs its prejudicial effect."[15]  Fed. R. Evid. 609(a).  Where more than ten years have passed since the witness's release from confinement, evidence of the conviction is admissible only upon a more demanding showing that its "probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect."  Fed. R. Evid. 609(b).  Balancing probative value against prejudicial effect under Rule 609 "must not become a ritual leading inexorably to admitting the prior conviction into evidence," and the government bears the burden of showing "that the probative value of a prior conviction outweighs the prejudice to the defendant."  *United States v. Lipscomb*, 702 F.2d 1049, 1063 (D.C. Cir. 1983) (en banc).

## B.  Analysis

According to the Government, if Defendant takes the stand and "den[ies] that the gun recovered from the sewer drain was his and that Officer Sterling was either lying or mistaken when he observed the defendant fire a round into the air," impeachment with Defendant's prior conviction should be permissible because it is "probative of the defendant's credibility" notwithstanding that "[t]he nature of the crime [does] not explicitly involve[] dishonesty."  Mot. Impeach at 4.  Defendant does not dispute that he was convicted of a crime punishable by more

---

[15] Evidence of a crime for which a "dishonest act or false statement" must be established to secure conviction always must be admitted, but that is not in issue here.  Fed. R. Evid. 609(a).

than a year in prison[16] or that less than 10 years passed since his release from confinement.[17]

Because the Government must prove that Defendant was convicted of a felony punishable by

more than a year in prison as an element of the charged offense, the Court understands the

Government's motion as seeking permission to impeach Defendant not only with evidence of the

existence of the prior conviction but also with evidence of the facts underlying it.[18]   Accordingly,

the Government's motion turns on whether the probative value of those facts outweighs their

prejudicial effect.  In conducting this balancing inquiry, courts consider "the nature of the crime,

the time of the conviction, the similarity of the past crime to the charged crime, the importance

of the defendant's testimony, and the degree to which the defendant's credibility is central to the

case."  *United States v. Jackson*, 627 F.2d 1198, 1209 (D.C. Cir. 1980).

### 1.  Nature of the Crime

Regarding the nature of the crime, the facts underlying Defendant's prior conviction do

not bear on any fact of consequence in this case, so their probative value is confined purely to

---

[16] As discussed above, in his Motion to Dismiss, Defendant disputes that he was convicted of a felony punishable by more than a year in prison, as defined in 18 U.S.C. § 921(a)(20), based on an argument that he has had his civil rights restored within the meaning of that statute.  *See* Mot. Dismiss.  But that definition does not control the applicability of Rule 609. *See* Fed. R. Evid. 609(c) (providing that "[e]vidence of a conviction is not admissible if . . . the conviction has been the subject of a pardon, annulment, certificate of rehabilitation, or equivalent procedure based on a finding that the person has been rehabilitated," but not including any exception for restoration of civil rights without a finding of rehabilitation); *see also id.* Advisory Committee Note ("A pardon or its equivalent granted solely for the purpose of restoring civil rights lost by virtue of a conviction has no relevance to an inquiry into character.  If, however the pardon or other proceeding is hinged upon a showing of rehabilitation the situation is otherwise.").

[17] Indeed, Defendant has not filed an opposition to the Government's motion beyond noting during the November 21, 2022 motions hearing that he opposes the motion.

[18] During the November 21, 2022 motions hearing, the Government indicated that it did not intend to introduce every factual detail underlying Defendant's prior conviction, but the Court lays out its analysis and conclusions in detail for avoidance of any doubt.

their tendency to impact the jury's assessment of his credibility.  As the D.C. Circuit has

explained, crimes of violence "rank . . . comparatively low on the scale of veracity-related crimes

and comparatively high on the scale of potential prejudice." *Id.* at 1210.  That risk of prejudice

is particularly acute here, as it does not take much to imagine that a jury could be blinded by

salacious details about how, in a fit of rage, Defendant strangled his girlfriend and bit off her

lips.  The Government cites *United States v. Jefferson*, 2021 WL 6196988 (D.D.C. Dec. 30,

2021) for the proposition that crimes not "explicitly involving dishonesty" nonetheless implicate

credibility because they show "conscious disregard for the rights of others."  Gov't Mot. at 4

(citing *Jefferson*, 2021 WL 6196988 at *5).  But this selective reading omits the *Jefferson* court's

further explanation that "crimes of impulse" are less "relevant to credibility." *Jefferson*, 2021

WL 6196988 at *5 (quoting *Lipscomb*, 702 F.2d 1049, 1070–71 (D.C. Cir. 1983)).  Of course,

crimes of impulse and violence have some bearing on a witness's credibility, and the probative-

prejudicial balance depends on the facts of each case.  *See, e.g.*, *United States v. Ford*, 2016 WL

259640 at *9 (D.D.C. Jan. 21, 2016) (finding that the probative value of one of a defendant's

convictions for second-degree assault and possession of a firearm during a crime of violence

outweighed the risk of unfair prejudice, but reserving judgment until trial on whether the

"cumulative prejudicial effect" of admitting evidence of both convictions would tip the balance

the other way).  But, as the Government agrees in its motion, such crimes are probative of

credibility mainly because they "remove[] any misconceptions that [the witness] is a model

citizen." *United States v. Pettiford*, 238 F.R.D. 33, 42 (D.D.C. 2006) (internal citation omitted);

*see* Gov't Mot. at 4–5.  In this case, the jury will be sufficiently disabused of any such

misconception when the Government puts on proof of the fact of Defendant's prior felony

conviction in its case in chief.  The factual details of that prior conviction, however, are substantially more prejudicial than probative.

### 2.  Time of Conviction

Regarding the time of the prior conviction, the D.C. Circuit has held that Rule 609(b)'s heightened relevance standard for convictions over ten years old "reflects Congress' belief that convictions over ten years old generally do not have much probative value," and that this "implies that many 9-year-old convictions are only slightly probative." *Lipscomb*, 702 F.2d at 1062.  Defendant was released from prison in 2013, around eight years before his arrest in this case in 2021.  Accordingly, while this timeline alone would not be dispositive, the Court finds that the probative value of his prior conviction is limited, somewhat, by how long ago it occurred.

### 3.  Importance of Testimony and Centrality of Credibility

The importance of Defendant's testimony and the degree to which Defendant's credibility is central to the case are two sides of the same coin—the more important his testimony, the more central his credibility.  The Government posits that Defendant may "deny that the gun recovered from the sewer drain was his and that Officer Sterling was either lying or mistaken when he observed the defendant fire a round into the air."  Mot. Impeach at 4.  Because Officer Sterling's account seems to be the most important evidence tying Defendant to the gun that he allegedly possessed, Defendant's testimony refuting that account is, naturally, of high importance.  This militates against admissibility.  *See Jackson*, 627 F.2d at 1209-10 (explaining that because the defendant's "personal testimony, if believed, could have been important in demonstrating the validity of [his] defense" that "arguably weigh[s] against admissibility.").  On the flip side, because that testimony would be important, the jury's assessment of his credibility

necessarily would be "centrally in issue," which militates in favor of admissibility. *Id.* These factors thus cancel each other out with respect to the Rule 609 balancing test.

## C. Conclusion

Based on the foregoing analysis, the Court finds that the probative value of the facts underlying Defendant's prior conviction is substantially outweighed by their prejudicial effect. However, as another court in this District observed in considering whether to permit impeachment using the defendant's second-degree murder conviction, "it also seems unfair to the Government to completely prevent it from presenting relevant impeaching evidence that would otherwise be admissible." *United States v. Pettiford*, 238 F.R.D. 33, 42 (D.D.C. 2006). That court therefore permitted the Government to "introduce evidence that Defendant was previously convicted of a felony offense, for which he was sentenced to a period of 7–21 years incarceration" but prevented it from "elicit[ing] any details as to the nature of the offense." *Id.* (citing *Wilson v. City of Chicago*, 6 F.3d 1233, 1236–37 (7th Cir. 1993) (Posner, J.) (other citations omitted)). Because the Court agrees that this "compromise . . . allows the Government to introduce relevant, probative evidence while at the same time cabining any possible unfair prejudice faced by Defendant," *id.*, it will adopt a similar approach here: should Defendant take the stand, the Government may impeach him with evidence of his prior conviction, but only up to eliciting that Defendant was convicted of a felony punishable by more than a year in prison, and that he received a sentence of thirty months' incarceration for that offense.

**V.  CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss Indictment (ECF No. 44) is

**DENIED** and the Government's Motion to Impeach Under Rule 609 (ECF No. 43) is

**GRANTED IN PART AND DENIED IN PART**.  An order consistent with this Memorandum

Opinion is separately and contemporaneously issued.

Dated:  May 2, 2023                                              RUDOLPH CONTRERAS
                                                                 United States District Judge